# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1587 | **DATE** | 9/3/2004 |
| **CASE TITLE** | Marrero v. Landerman, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, defendants' motion for summary judgment (as to the claim asserted in Count I of the amended complaint) (Doc. # 17) is denied. This case is set for a status conference at 9:30a.m. on Friday, October 8, 2004.

(11) [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANIEL J. MARRERO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 03 C 1587 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| JULIE LANDERMAN, in her individual capacity, and DAWN MALEC, in her individual capacity, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel J. Marrero filed a two-count amended complaint against defendants Julie Landerman and Dawn Malec (both police officers in Joliet, Illinois), pursuant to 42 U.S.C. § 1983. In it, he alleges that defendants violated his Fourth Amendment rights by unlawfully arresting him (Count I) and by using unreasonable force in connection with his arrest (Count II). Plaintiff seeks compensatory and punitive damages, as well as attorneys' fees and costs.

Defendants' motion for summary judgment as to Count I of the amended complaint is now before this court. For the reasons set forth below, the motion is denied.

## I. Summary Judgment Standard

At summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See, e.g., Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Schuster v.*

*Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)). A triable fact issue exists "only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Schuster*, 327 F.3d 569, 573 (7th Cir. 2003) (quoting *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 321 (7th Cir. 2001) (quotation omitted)).

The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 923, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). "Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims," the non-movant must then present specific facts showing that there is an issue for trial. *Michael v. St. Joseph County, et al.*, 259 F.3d 842, 845 (7th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)). To successfully oppose the motion, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue. *Celotex*, 477 U.S. at 324. A scintilla of evidence in support of the non-movant's position is insufficient to defeat a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment must be entered against a party who fails to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

## II. Factual Background

In his amended complaint, plaintiff asserts two claims pursuant to 42 U.S.C. § 1983. First, he alleges that defendants unlawfully arrested him (*i.e.*, arrested him without probable cause) in violation of the Fourth Amendment (Count I). Secondly, he alleges that defendants

used unreasonable force in effecting his arrest, also in violation of the Fourth Amendment (Count II). Defendants have moved for summary judgment only as to Count I (and not Count II) of the amended complaint, and, specifically, have moved only as to whether probable cause existed for plaintiff's arrest.[1] Only those facts relevant to the court's disposition of defendants' motion are addressed herein.

### A. Defendants' Contentions Concerning Plaintiff's Alleged Failure to Adhere to the Requirements of L.R. 56.1 and This Court's "Standing Order Regarding Motions for Summary Judgment"

Defendants contend that plaintiff failed to follow the Local Rules and this court's "Standing Order Regarding Motions for Summary Judgment" in responding to their L.R. 56.1(a)(3) statement of material facts (*i.e.*, in his L.R. 56.1(b)(3)(A) statement) and in setting forth his own L.R. 56.1(b)(3)(B) statement of additional facts. On that basis, they ask the court to strike plaintiff's response to their statement of facts, his statement of additional facts, and his memorandum of law in opposition to their motion for summary judgment and to grant summary judgment in their favor. As a preliminary matter, defendants' request is wholly inappropriate, as it is simply set forth in their response statement and not in a separate motion to strike. Setting aside this procedural flaw, defendants' objections to plaintiff's form are almost wholly without merit and plainly do not warrant the striking of plaintiff's submissions or the granting of defendants' motion for summary judgment.

First, defendants seek to fault plaintiff on a rather meaningless technicality (and do so in a disingenuous manner not viewed favorably by this court). Defendants contend that because

---

[1] Although defendants asserted the affirmative defense of qualified immunity in answering the complaint, they have not moved for summary judgment on the issue of qualified immunity.

3

plaintiff's statement of additional facts begins with plaintiff's paragraph 62 and "[t]here is no indication where the Plaintiff's additional 61 paragraphs are," "it is impossible for the Defendants to contest the additional facts stated by the Plaintiff, using the format required by the standing order." (Def. Resp., pp. 1-2). This specious argument ignores the fact that defendants' initial statement of facts contained 61 paragraphs. It is manifestly clear that plaintiff simply numbered his eleven additional fact paragraphs in sequence -- following defendants' 61 paragraphs. In so doing, plaintiff did not even technically violate L.R. 56.1 (although most practitioners in the Northern District begin numbering their L.R. 56.1(b)(3)(B) statements anew (*i.e.*, starting with the number "1"). In any event, this aspect of plaintiff's statement of additional facts presented no genuine impediment to defendants' ability to respond thereto.[2]

Defendants also contend that plaintiff improperly included explanation and argument in his L.R. 56.1(b)(3)(A) statement, rather than merely stating his disputes with defendants' asserted facts and referring the court to "additional or contrary facts." (Def. Resp., pp. 1-2).[3] In fact, plaintiff admitted the majority of defendants' facts. Where he sought to contradict dispute defendants' facts, he properly made citations to portions of the record supporting his disagreement. Although plaintiff may have gone a bit overboard in explaining how the cited

---

[2] Relatedly, defendants contend in both their response to plaintiff's statement of facts and in their reply memorandum that references in plaintiff's opposition memorandum to any paragraphs numbered 1 - 61 should be stricken because plaintiff's statement of additional facts begins with paragraph 62. This contention is also equally disingenuous and baseless. Common sense, as well as the substance and context of plaintiff's citations, make eminently clear that they refer to defendants' paragraphs 1 - 61 and plaintiff's own paragraphs 62-72.

[3] It is worth noting that, here, defendants have misstated the requirements of L.R. 56.1(b)(3)(A), which provides that the non-movant, in the case of disagreement with a fact asserted by the movant, shall cite "specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(A). "Additional" facts are properly contained only in the non-movant's L.R. 56.1(b)(3)(B) statement of additional facts. *See* L.R. 56.1.

portions of the record could contradict defendants' asserted facts, the court finds that plaintiff's L.R. 56.1(b)(3)(A) & (b)(3)(B) statements substantially comply with L.R. 56.1 and with this court's Standing Order.

Finally, defendants contend with respect to plaintiff's L.R. 56.1(b)(3)(B) statement that "[t]he references used to support the statement of fact [sic] are not accompanied by any documents containing any type of tabbing and the references are only to page numbers and not specific lines as required by the standing order." (Def. Resp., p. 2). In fact, plaintiff explained at the outset of his L.R. 56.1(b)(3) submission that (and how) he would refer to exhibits contained in defendants' self-described "Local Rule 56.1(a)(1) Documents" (which consisted of five complete deposition transcripts and one additional exhibit). Plaintiff also noted that he was submitting two additional exhibits and made clear precisely where those exhibits were located and how he would refer to them. Although it would have been helpful (and preferable) for plaintiff to have included specific line numbers in his citations to the deposition transcripts, his citations to the relevant pages of the deposition transcripts were sufficient for this court to evaluate his disputes with defendants' presentation of the facts and his own presentation of the facts.[4]

---

[4] Ironically, it was defendants who failed to comply with the spirit, if not the letter, of the pertinent rules and, in so doing, complicated the court's consideration of their motion for summary judgment. In their supporting memorandum, instead of referring the court to paragraphs contained in their L.R. 56.1(a)(3) statement, defendants cited only actual portions of the evidentiary record. This required the court to engage in the relatively tedious task of matching up the factual assertions and supporting citations contained in defendants' memorandum with defendants' fact paragraphs. As stated in this court's Standing Order, "[i]t is very helpful if citations to facts in the memorandum are to both the LR 56.1(a)(1) documents establishing the fact and to the L.R. 56.1(a)(3) statement."

### B. Relevant Facts Concerning Plaintiff's Arrest

#### 1. Background

On September 28, 2002, plaintiff (then twenty years old) arrived at Señor Tequila,[5] a restaurant/bar located in Joliet, Illinois, after 10:00 p.m. Sheena Grabowski (then eighteen years old) was plaintiff's girlfriend at that time and was present at Señor Tequila on the same evening. At approximately 1:30 a.m. (*i.e.*, in the early morning hours of September 29, 2002), plaintiff and Grabowski became involved in an argument, which either began or continued in the parking lot of Señor Tequila. Their argument concerned plaintiff's putting his arms around another female on the dance floor. Plaintiff did not hit Grabowski during their ensuing argument. Following the argument, he was arrested for domestic battery.

Defendants Landerman and Malec are police officers for the City of Joliet. On September 29, 2002, Landerman and Malec were both on patrol duty. Landerman was the first police officer to arrive in the Señor Tequila parking lot during plaintiff's and Grabowski's argument, and she ultimately made the decision to arrest plaintiff for domestic battery.

#### 2. How Landerman Initially Became Aware of Plaintiff's and Grabowski's Argument and When the Witness Against Plaintiff Made Her Statement to Landerman

The parties dispute precisely how Landerman initially became aware of the situation in Señor Tequila's parking lot and, relatedly, when – relative to plaintiff's arrest – the witness against plaintiff (Margie Guiher) made her statement to Landerman. The parties agree that the occupants of a van driven by Margie Guiher and containing two passengers initially brought the

---

[5] The parties have consistently referred to this establishment as "Senior Tequila's" in their submissions to the court. The court *sua sponte* undertook to ascertain the establishment's correct name and learned that it is "Señor Tequila."

6

situation to Landerman's attention.

By Guiher's own testimony, she was driving at approximately 1:30 a.m. on September 29, 2002 and traveling on Jefferson Street (on which street Señor Tequila is located) when she observed in the Señor Tequila parking lot a man with his arms above a woman's shoulders as if he were hugging her. The van was one half block from that parking lot and heading away from it when Guiher heard the woman scream. She turned around (*i.e.*, did a U-turn) and drove into the parking lot. Guiher testified that, after she had done so, she saw a police car begin to drive by on Jefferson Street, and she flickered her lights on and off at it. She testified that the police car then did a U-turn on Jefferson and came back. Guiher further testified that four additional squad cars pulled into the parking lot and that a female officer later came up to her van and asked her what she saw. Guiher testified that she told the officer that she saw the man hit the woman. Defendants embraced Guiher's version by asserting it as material fact in its L.R. 56.1(a)(3) statement, with the exception of Guiher's account of how she flickered her lights on and off at the police car (*i.e.*, to get its attention), which defendants completely left out of their account of Guiher's involvement.

Contrary to Guiher's version of events, Landerman testified that she was parked behind a gas station that was approximately three quarters of a mile from the Señor Tequila parking lot when Guiher's van pulled in and all three people in the van made statements to her to the effect that a man was beating up a woman in Señor Tequila's parking lot. Landerman testified that she subsequently left and drove to said parking lot (which was three quarters of a mile away). Landerman also testified to a later interaction with Guiher, explaining that after she had arrived at Señor Tequila and while she was talking with Grabowski, the van that had originally flagged

her down pulled into the parking lot (with Guiher and two passengers in it). Landerman testified that she subsequently spoke to Guiher in the Señor Tequila parking lot and had another officer take Guiher's statement. Landerman also testified that in the police report that she prepared regarding the incident, after writing about plaintiff being taken into custody, she wrote that she "then" spoke to Guiher and her companions and that Guiher told her that she had observed the man holding the female around the chest and that plaintiff had slapped Grabowski in the head area. On cross-examination, Landerman admitted that the word "then" connoted in her mind a subsequent event and that she was not sure why she wrote her report as she did because the conversation at issue took place before she had arrived at Señor Tequila.[6] Almost all of this evidence was excluded from defendants' account of Landerman's actions in connection with the arrest and was instead only cited by plaintiff in response to defendants' fact statement (in order to contradict assertions contained therein).[7]

In fact, defendants asserted in their statement of material facts only that Landerman was advised by the occupants of the van that a man was beating up a woman in the Señor Tequila parking lot. Critically, defendants did not, in their statement of material facts, affirmatively seek to establish the timing of this occurrence, although (as set forth above) Landerman testified that she was so advised prior to going to the Señor Tequila parking lot. And defendants ostensibly

---

[6] However, earlier in her deposition, when asked where she was when Guiher told her that plaintiff had slapped Grabowski in the head, she said that she did not know – none of the parties cited this fact.

[7] Adding another layer of confusion to the question of when Landerman actually spoke to Guiher and the other occupants of the van, citing plaintiff's deposition testimony, defendants assert in their L.R. 56.1(a)(3) statement that there was a woman in a van in the parking lot during the argument and that she was already present when the police arrived. (Def. L.R. 56.1(a)(3) Statement, ¶¶ 33-34). Likewise, they allege that Guiher was present when the police arrived and that, when she spoke to a female officer there, she told her that she saw the man hitting the woman. (*Id.*, ¶¶ 40-41).

8

sought to imply that that was the case via the order in which they recited the pertinent facts in their L.R. 56.1(a)(3) statement. In any event, for purposes of their motion for summary judgment, defendants established only that, at some point in the early morning hours of September 29, 2002, Guiher told Landerman that she saw plaintiff hit Grabowski. Plaintiff contends that certain record evidence and, specifically, the inherent contradictions between Landerman's and Guiher's testimony (as set forth above), create a fact issue concerning whether Guiher made her statement to Landerman *prior* to the arrest (as defendants contend) or *following* the arrest (as plaintiff contends). Defendants did not respond in any substantive way to plaintiff's argument in this regard either in their reply brief or in their response to plaintiff's fact statement.

### 3. What Landerman Observed and Was Told by Plaintiff and Grabowski After Arriving at the Señor Tequila Parking Lot

As Landerman pulled into the parking lot of Señor Tequila, she observed a male and female therein (plaintiff and Grabowski). Landerman testified that she observed what appeared to be the male subject striking the female subject, based upon his hand going in an "aggressive manner" towards her. She also admitted at her deposition that she could not completely observe them from her position and that she did not actually see the man's hand strike the woman. (Puzzling to this court, plaintiff did not see to fit to cite this fact.)

As soon as Landerman entered the parking lot, plaintiff and Grabowski began walking in opposite directions. Grabowski was still angry with plaintiff at that time, and plaintiff was intoxicated. Landerman approached plaintiff and asked him what had happened. At some point, plaintiff told Landerman that he never hit Grabowski.[8] Landerman subsequently spoke to

---

[8] Although the parties dispute the timing of plaintiff's statement in this regard, their dispute is immaterial herein.

9

Grabowski, who told her that plaintiff had not hit her, but had pushed her. Grabowski testified that as Landerman walked away from her and Grabowski saw that Landerman was "going after [plaintiff]" and "putting him in cuffs," she "kept telling [Landerman]" that plaintiff did not hit her and that she had hit him. Grabowski testified that she informed Landerman that she had hit plaintiff "as soon as [Landerman] turned away from [Grabowski]." Plaintiff testified that, as he was being put in handcuffs, Grabowski was screaming at Landerman that she had hit plaintiff and that plaintiff hadn't done anything. Landerman, conversely, testified that Grabowski never told her that she had hit plaintiff.

The parties also dispute whether actually Landerman observed a reddening to Grabowski's neck and chest area during the course of their conversation, as Landerman testified and as defendants contend in support of their motion. As evidence that Landerman did not observe such reddening, plaintiff cites Landerman's own testimony that she was present when the evidence technician who was to take pictures of Grabowski's purported redness declined to do so, informing Landerman that he could not see any such redness.

### 4. Defendants' Proffered Bases for Landerman's Decision to Arrest Plaintiff for Domestic Battery

Defendant Malec's role in plaintiff's arrest was limited. She was dispatched to Señor Tequila in response to a request for assistance issued by Landerman. Upon her arrival at that establishment, she observed Landerman speaking with some individuals. Malec stayed by plaintiff while Landerman went to speak with Grabowski. It was after Landerman returned from speaking with Grabowski that she advised plaintiff that he was under arrest for domestic battery. Malec assisted Landerman in arresting and handcuffing plaintiff. She relied upon Landerman's knowledge in so doing.

Landerman alone made the decision to arrest plaintiff. In their briefing and other submissions in support of their motion for summary judgment, defendants have contended that her decision was based upon: (1) Guiher's "statement" to Landerman; (2) Grabowski's statement to Landerman that plaintiff had pushed her; and (3) the redness to Grabowski's neck and chest area observed by Landerman (Def. L.R. 56.1(a)(3) Statement, ¶ 26; Def. Mem., p. 4). Although Landerman testified that there were no other reasons, defendants also argued in their supporting memorandum that Landerman's own visual observations prior to speaking with Grabowski (*i.e.*, plaintiff's apparent hitting of Grabowski) partially formed the basis for her decision. (Def. Mem., p. 4). Interestingly, defendants do not contend that the statements of all three van occupants (allegedly made at the gas station) formed the basis for Landerman's decision, although they do cite those statements in support of their argument for the existence of probable cause. (Def. Mem., p. 3). Adding another wrinkle to the increasingly hazy facts, Landerman testified that it was the "statement" of the three people who flagged her down (rather than the statement of Guiher, specifically or exclusively) that partially formed the basis for her decision to arrest plaintiff.

### III. Analysis

Section 1983 provides as follows, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. As relevant herein, plaintiff seeks to hold defendants liable under section 1983 for the violation of his Fourth Amendment rights, based upon his allegedly unlawful arrest. To establish that claim, plaintiff must prove that he was arrested without probable cause. *Booker*

11

*v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). Defendants argue that they are entitled to summary judgment on plaintiff's unlawful arrest claim (*i.e.*, Count I) on the grounds that the undisputed facts establish the existence of probable cause for plaintiff's arrest.

"Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp v. City of Noblesville, Indiana*, 320 F.3d 733, 743 (7th Cir. 2003) (citation omitted). Probable cause for arrest exists when, "at the moment the decision is made, the facts and circumstances within [the officers'] knowledge and of which [they have] reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999) (citations omitted). *See also Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000).

As a general proposition, "so long as a reasonably credible witness or victim informs the police that someone has committed . . . a crime, the officers have probable cause to place the alleged culprit under arrest . . . ." *Woods*, 234 F.3d at 987 (internal quotations and citation omitted). On the flip side, "the fact that the officer later discovers additional evidence unknown to her at the time of the arrest is irrelevant to whether probable cause existed at the crucial time." *Qian*, 168 F.3d at 953-54. Moreover, "the existence of probable cause to arrest does not depend upon the actual truth of the complaint." *Woods*, 234 F.3d at 987; *see also Qian*, 168 F.3d at 953.[9]

"While the existence of probable cause is often a jury question, summary judgment is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Qian*, 168 F.3d at 953 (citations omitted). Where

---

[9] For this reason, the fact that plaintiff was never subsequently charged with domestic battery is not dispositive of the issue of probable cause.

"the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, [the court] cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law." *Morfin v. City of East Chicago*, 349 F.3d 989, 1000 (7th Cir. 2003) (in pertinent part, reversing grant of summary judgment on the plaintiff's Fourth Amendment claim on the grounds that the parties disputed the facts within the knowledge of the arresting officer) (internal quotations and citation omitted). Here, there is room for a difference of opinion concerning the material facts and/or the reasonable inferences to be drawn therefrom, and summary judgment is not appropriate.

Defendants contend that Guiher's statement to Landerman, Landerman's observation of what appeared to be plaintiff hitting Grabowski, Grabowski's statement that plaintiff had pushed her, and Landerman's observation of redness in Grabowksi's neck and chest area would warrant a prudent person in believing that plaintiff had committed domestic battery. However, plaintiff has pointed to genuine fact issues concerning whether: (1) Guiher made her statement to Landerman prior to or after the time of plaintiff's arrest (which is relevant because only information within the arresting officer's knowledge at the time of the arrest is relevant for purposes of the probable cause inquiry); (2) Landerman observed what appeared to be plaintiff hitting Grabowski; and (3) Landerman observed redness on Grabowski's person. The inherent contradictions between Guiher's and Landerman's accounts of their first and second encounters with one another are striking, and they suggest that a reasonable jury could disbelieve Landerman's version of when Guiher told her that she witnessed plaintiff hit Grabowski. Such a

13

finding – which would necessarily include a subsidiary finding that Landerman had lied about one of the bases for her arrest of plaintiff – could readily impact Landerman's general credibility and cause a reasonable jury to disbelieve her testimony concerning the other "facts" within her knowledge at the time of the arrest. Moreover, the undisputed fact that plaintiff did not actually hit Grabowski could also cause a reasonable jury to disbelieve Landerman's claims that she saw what appeared to be plaintiff hit Grabowski and that she observed redness in Grabowski's chest and neck area. Even setting aside that potential basis for contradicting Landerman, her own admission that she did not actually see plaintiff's hand strike Grabowski and that she did not have a complete view of them from her position severely undermines defendants' reliance upon Landerman's alleged (and, at best, equivocal) "observation." The evidence technician's decision not to document the alleged redness on the grounds that he could not, personally, discern it could, at least in combination with the above evidence, lead a reasonable jury to disbelieve Landerman's claim concerning the redness.

In sum, defendants have not established that the undisputed facts demonstrate the existence of probable cause for plaintiff's arrest for domestic battery and that they, therefore, are entitled to judgment as a matter of law. Plaintiff successfully challenged defendants' version of the facts upon which they sought to establish their claim of probable cause, and defendants failed to respond adequately (or, really, at all) to most of plaintiff's factual assertions in that regard.[10]

---

[10] Defendants directed no argument towards plaintiffs' contradiction of numerous material facts. Additionally, they essentially made only two substantive arguments in their reply memorandum – one concerning plaintiff's assertion that a reasonable jury could determine that plaintiff was acting in self-defense, thus defeating the existence of probable cause, and the other concerning the adequacy of Landerman's pre-arrest investigation. It is not necessary for this court even to address either of those two arguments because defendants' own stated bases for probable cause failed to find uncontradicted support in the record. At this time, the court reserves judgment as to whether, in what sense, and to what degree the self-defense issue is relevant to disposition of plaintiff's claims and will address this matter, as

Because plaintiff has successfully challenged Landerman's description of the facts and presented a factual account from which a reasonable jury could decide that probable cause for his arrest was lacking, defendants' motion for summary judgment must be denied. *Morfin*, 349 F.3d at 1000. *See, e.g., Axelrod v. Mercado*, No. 02 C 2619, 2004 U.S. Dist. LEXIS 15651, at *8 (N.D. Ill. Aug. 10, 2004) (denying summary judgment on question of probable cause because it depended upon the resolution of factual disputes); *Vainder v. Powell*, No. 03 C 1509, 2004 U.S. Dist. LEXIS 14175, at *20 (N.D. Ill. July 26, 2004) (denying summary judgment on the question of probable cause because a reasonable jury could have found that the arresting officer was unaware of five of the seven facts or circumstances argued by the defendants and the other two did not amount to probable cause); *Barten v. Bates*, No. 99 C 50170, 2002 U.S. Dist. LEXIS 5970, at *6-7 (N.D. Ill. Apr. 3, 2002) (denying motion for summary judgment on grounds that material factual disputes existed concerning the question of probable cause for arrest for domestic battery); *Cefalu v. Village of Elk Grove*, No. 94 C 1990, 1996 U.S. Dist. LEXIS 9679, at *10-12 (N.D. Ill. July 11, 1996) (denying motion for summary judgment on the question of probable cause for arrest on grounds that the facts concerning the basis and extent of the information within the arresting officers' knowledge prior to arresting the plaintiff was in dispute).

---

appropriate, if and when this case proceeds to trial.

## IV. Conclusion

Based on the foregoing, defendants' motion for summary judgment as to Count I of plaintiff's complaint is denied.

**Enter:**

_____
David H. Coar
**United States District Judge**

**Dated: September 3, 2004**